# Wytheville.

## HOGG, BY, ETC. v. PLANT.

### June 17, 1926.

1. MASTER AND SERVANT—*Existence of Relationship—Watchman and His Employer.*—The relationship of master and his servant exists between a watchman employed to guard a store house and his employers.

2. MASTER AND SERVANT—*Wrongful Arrest by Watchman—Liability of Master for Punitive Damages—Case at Bar.*—The instant case was an action by plaintiff against the employers of a watchman for the illegal arrest of plaintiff by the watchman.

   *Held:* That defendants could not be held liable for punitive damages unless the watchman did some act warranting punitive damages, and such act was previously authorized or subsequently ratified by the defendants.

3. AGENCY—*Exemplary Damages—Liability of Principal for Exemplary Damages.*—Exemplary or punitive damages, being awarded, not by way of compensation to the sufferer but by way of punishment of the offender and as a warning to others, can only be awarded against one who has participated in the offense. A principal, therefore, though of course liable to make compensation for the injury done by his agent, within the scope of his employment, cannot be held for exemplary or punitive damages, merely by reason of wanton, oppressive or malicious intent on the part of the agent, unless the principal participated in the wrongful act.

4. FALSE IMPRISONMENT—*Illegal Arrest—Damages—Compensatory Damages—Excessive Damages.*—While there is no measure of compensatory damages in cases of false imprisonment or illegal arrest, yet the amount may be so large as to exceed any compensation that a jury could reasonably allow under the circumstances of the case. In such case, the verdict is excessive.

5. NEW TRIAL—*Excessive Damages—Remedy.*—The remedy for an excessive verdict is either to set it aside and award a new trial, or to put the successful party upon terms to release the excess or else submit to a new trial. In cases where there is no measure of damages but the damages are excessive, it is entirely proper to set aside the verdict and have a new assessment of damages by a jury, which is the more appropriate tribunal for that purpose.

6. FALSE IMPRISONMENT—*Damages—Excessive Damages—Case at Bar.*— In the instant case, an action for false imprisonment, where defenddants' watchman arrested plaintiff on the charge of an attempt to break into defendants' storehouse, the verdict for plaintiff for $2,500 exceeded any compensatory limit and could only be accounted for on the theory that the jury, under an erroneous instruction given by the court, gave plaintiff exemplary damages.

7. FALSE IMPRISONMENT—*Master and Servant—Exemplary Damages— Instructions.*—In an action for false imprisonment against the employers of a watchman, instructions that the plaintiff might recover punitive damages if the unlawful act was committed with malice, and that malice might be inferred from wrongful act based upon no reasonable ground, were erroneous because if the instructions referred to personal acts of defendants, they were without evidence to support them, and if to the acts of their servant, they were plainly wrong where there was no evidence that the servant's acts were authorized or ratified by defendants.

8. NEW TRIAL—*Wrong Reason Assigned for Setting Aside of Verdict.*— It is immaterial that in setting aside a verdict the court gave a wrong reason if for any reason the verdict should have been set aside.

9. APPEAL AND ERROR—*Two Trials in Lower Court—Verdict set Aside for some Reason Other than that it was Contradicted by or was without Evidence to Support it—Rule of Practice in the Supreme Court of Appeals.*— Neither section 6251 nor section 6363 of the Code of 1919 has any application except where there has been a motion to set aside the verdict because it is contrary to the evidence, or is without evidence to support it. If the verdict is set aside for some other reason, or if no final judgment has been entered under section 6251, and, in either case, a new trial has been awarded, the Supreme Court of Appeals has adopted as a rule of practice what was formerly provided by section 3484 of the Code of 1887, that when there have been two trials in the lower court it will look first to the evidence and proceedings on the first trial, and if it discovers that the court erred in setting aside the verdict on that trial, it will set aside and annul all proceedings subsequent to the said verdict and enter judgment.

Error to a judgment of the Circuit Court of the city of Norfolk, in a proceeding by motion for a judgment for damages. Judgment for defendants. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*A. A. Bangel*, for the plaintiff in error.

*Herman A. Sacks*, for the defendants in error.

Burks, J., delivered the opinion of the court.

This was an action for false imprisonment brought against the defendants for the conduct of a watchman whom they had employed to guard their storehouse at night. There were two trials of the case. On the first trial there was a verdict for the plaintiff for $2,500, which the trial court set aside. On the second trial there was a verdict and judgment for the defendants. The case is before us now on exception to the judgment of the trial court setting aside the first verdict. None of the proceedings on the second trial is before us. If any exception was taken to the proceeding or judgment in the second trial it does not appear from the record before us.

The grounds of the motion to set aside the first verdict were: (1) That the verdict was contrary to the law and the evidence; (2) That it was excessive; (3) That the size of the verdict clearly showed that punitive damages were allowed, and that no such damages could have been awarded against the defendants; (4) That the court erred in granting the instructions tendered by the plaintiff; and (5) That the court erred in amending instruction "A" offered by the defendants. The trial court sustained the motion and set aside the verdict, "giving as a reason therefor that the size of the verdict clearly indicated that the jury was influenced by a passion or prejudice," and stating that it "did not pass upon any other grounds urged by the defendants in support of their motion for a new trial."

The defendants had a junk yard in the city of Norfolk, and adjoining it on the same lot an Army and Navy store, which had been broken into thirteen times in eleven months, and three or four times in the eighteen days immediately preceding the present controversy. They employed Edward Stevenson as a watchman to guard their property at night and, if possible, to break up these depredations.

The plaintiff is a young man, twenty years of age, and resides in the city of Portsmouth across the Elizabeth river from the city of Norfolk. On Sunday afternoon, January 18, 1925, he went to call on a lady friend, Miss Mary Owens, in the city of Norfolk. He remained there until about nine o'clock, and left for home going down Front street on which is located the defendants' plant. There is serious conflict in the testimony as to whether he entered the plant. He says that he did not. At all events, immediately after he passed the plant, the watchman pursued him and overtook and arrested him, charging him with entering the plant, and at the point of a pistol brought him back to the plant of Johns Brothers, Inc., which adjoins the plant of the defendants. When they got to the defendants' plant, the watchman said to the plaintiff, "that is where you tried to get in," and the plaintiff replied that he did not, and the watchman said, "You are a God damn liar," and repeated it three times. When they got to the Johns Brothers' plant the watchman called up police headquarters and the Plant residence. Several police detectives responded promptly, and while the watchman was giving the detectives his version of what had occurred, Marvin Plant, one of the defendants and the junior member of the firm of Plant and Son, came in. The watchman was making his report to the detectives.

Nothing was said about the watchman having cursed the plaintiff, and he denied on the witness stand that he had done so. Marvin Plant did not speak a word to anyone. All who were present testify that they could get nothing out of the plaintiff. Marvin Plant says: "The chap was crying and couldn't give him (detective) any suitable reply." The detective said: "Come go to the police station," and took him to detective headquarters in an automobile. The detective testified that, in answer to questions, the plaintiff stated that he had been visiting Miss Owen, and that on his way home he had stepped into the plant to urinate. He was then taken to Miss Owen's home and his account of his visit was fully verified by her mother, and they returned to the detective headquarters and the plaintiff was discharged. Neither the watchman nor Marvin Plant, nor the police, knew the plaintiff or had ever seen him before.

A witness for the plaintiff testified that he knew that the plaintiff had been visiting that day at the Owen residence and that he suggested to the watchman to go there and verify the statement, but that the watchman rebuffed him and asked him what he had to do with it. Several witnesses for the plaintiff also testified that they saw the plaintiff pass the defendants' plant and that he did not go in. On this question, the evidence was conflicting; but there is no conflict as to the part taken by the defendants in what was done.

There was some testimony about Miss Owen refusing to go with the plaintiff afterwards, but it is not claimed that he was engaged to her, nor is any special damage claimed in the declaration in consequence thereof. In the view we take of the case, it will be unnecessary to refer further to this testimony.

[1, 2] It is very plain that the relation of the defend-

ants and the watchman was that of master and servant, and it is equally plain that the defendants cannot be held liable for punitive damages, unless the watchman did some act warranting punitive damages, and that such act was previously authorized or subsequently ratified by the defendants. *Norfolk & W. R. Co.* v. *Neely,* 91 Va. 539, 22 S. E. 367; *Southern R. Co.* v. *Grubbs,* 115 Va. 876, 80 S. E. 749; *Hines* v. *Gravins,* 136 Va. 313, 112 S. E. 869, 118 S. E. 114; *Lake Shore R. Co.* v. *Prentice,* 147 U. S. 101, 13 L. Ct. 261, 37 L. Ed. 97. If any such act was done, the record discloses no evidence of previous authorization or subsequent ratification.

[3] In the *Prentice Case* it was said: "Exemplary or punitive damages, being awarded, not by way of compensation to the sufferer but by way of punishment of the offender, and as a warning to others, can only be awarded against one who has participated in the offense. A principal, therefore, though of course liable to make compensation for the injury done by his agent, within the scope of his employment, cannot be held for exemplary or punitive damages, merely by reason of wanton, oppressive or malicious intent on the part of the agent."

In *Hogan* v. *Providence R. Co.,* 3 R. I. 88, 62 Am. Dec. 377, it was said: "We do not see how such damages can be allowed, when the principal is prosecuted for the tortious act of his servant, unless there is proof in the case to implicate the principal and make him *particeps criminis* of the agent's act.

"No man should be punished for that of which he is not guilty. When the proof does not implicate the principal, and however wicked the servant may have been, the principal neither expressly nor impliedly authorizes or ratifies the act, and the criminality of

it is as much against him as against any other member
of society, we think it is quite enough that he shall
be liable in compensatory damages for the injury sus-
tained in consequence of the wrongful act of a person
acting as his servant."

It must be considered as the settled law of this
State that punitive damages cannot be awarded
against a master or principal for the wrongful act
of his servant or agent in which he did not participate,
and which he did not authorize or ratify.

[4, 5] It is true that there is no measure of compen-
satory damages in a case of this kind, and yet the
amount may be so large as to exceed any compensa-
tion that a jury could reasonably allow under the
circumstances of the case. In such case, the verdict
is excessive. The remedy for an excessive verdict is
either to set it aside and award a new trial, or to put
the successful party upon terms to release the excess
or else submit to a new trial. In cases where there is
no measure of damages, but the damages are excessive,
it is entirely proper to set aside the verdict and have a
new assessment of damages by a jury, which is the
more appropriate tribunal for that purpose.

[6] It may be said of the verdict in the instant case,
as was said of the verdict in *Norfolk & W. R. Co. v.
Neely, supra:* "The verdict exceeded any compensa-
tory limit, and can only be accounted for upon the
theory that the jury, under erroneous instructions of
the court, gave to him exemplary damages."

[7] The defendant in error assigns as cross-error
the giving of certain instructions for the plaintiff,
among them instructions (1) and (3). These instruc-
tions were as follows:

1. " * * * And if the jury believe from the
evidence the said wrongful act or acts to have been

committed by the defendants with malice, they may also award to the plaintiff punitive damages."

3. "The court instructs the jury that an improper motive may be inferred from a wrongful act based upon no reasonable ground, and that such improper motive constitutes malice in law, and to constitute such malice it is not necessary that such wrongful act should be prompted by anger, malevolence or vindictiveness; but such inference or malice may be removed by the evidence in the case."

There was no evidence of any wrongful act done by either of the defendants, and Instruction 1 could only have had reference to acts of the watchman as servant of the defendants. If the instruction referred to personal acts of the defendants, it was without evidence to support it; if to the acts of their servant, it was plainly wrong. In any view of the case, it was error to have given it. The verdict, therefore, should have been set aside for error in the instructions. The excessive verdict must have been brought about by the instructions.

[8] The trial court committed no error in setting aside the verdict. It is immaterial that it gave a wrong reason for a correct judgment.

This ends the case, as there is no exception to the proceedings and the judgment on the second trial.

[9] Neither section 6251 nor section 6363 of the Code has any application except where there has been a motion to set aside the verdict because it is contrary to the evidence, or is without evidence to support it. If the verdict is set aside for some other reason, or if no final judgment has been entered under section 6251, and, in either case, a new trial has been awarded, we have adopted as a rule of practice what was formerly provided by section 3484 of the Code of 1887,

that when there have been two trials in the lower court we will look first to the evidence and proceedings on the first trial, and if we discover that the court erred in setting aside the verdict on that trial, we will set aside and annul all proceedings subsequent to the said verdict and enter judgment here. *Clark* v. *Hugo*, 130 Va. 99, 107 S. E. 730.

*Affirmed.*