PRESENT: Lacy, Keenan, Koontz, Kinser, Lemons, and Agee, JJ., and Stephenson, S.J.

BLUE RIDGE SERVICE CORPORATION
OF VIRGINIA

                                             OPINION BY
v.  Record No. 050896              JUSTICE G. STEVEN AGEE
                                           January 13, 2006
SAXON SHOES, INCORPORATED

                FROM THE CIRCUIT COURT OF HENRICO COUNTY
                        Daniel T. Balfour, Judge

     Blue Ridge Service Corporation of Virginia ("Blue Ridge")

appeals from the judgment of the Circuit Court of Henrico County

confirming a jury verdict in favor of Saxon Shoes, Inc.  On

appeal, Blue Ridge challenges the admission of certain testimony

of Saxon's expert witness and contends Saxon failed to establish

a prima facie case of negligence.  For the reasons stated below,

we will reverse the judgment of the trial court.

         I.    BACKGROUND AND MATERIAL PROCEEDINGS BELOW

     At 6:00 p.m. on the evening of February 17, 2001, a

cleaning crew from Blue Ridge arrived to clean the Saxon Shoes

store located at 1527 Parham Road in Henrico County.  Transito

D. Z. Javier supervised the cleaning crew comprised of Maria A.

E. Castro, Moises Yus, Wilmer R. R. Garcia, and Wilbur Martinez.

At 8:54 p.m., the Henrico County fire department received a

report of a fire at the store.  Much of the store was destroyed

in the fire.

                                  1

On August 16, 2001, Saxon filed a motion for judgment against Blue Ridge, alleging the cleaning crew's negligence caused the fire.[1]  Prior to trial, Blue Ridge filed a motion in limine seeking to exclude the testimony of Ronald L. Hiteshew, Saxon's fire cause and origin expert, "with respect to Mr. Hiteshew's opinion that the fire was caused by the careless disposal of smoking materials."  After hearing oral argument, the trial court denied the motion and later denied a renewed motion to limit Hiteshew's testimony.

Hiteshew arrived at the store the morning after the fire and spent seven days conducting his investigation.  He first identified the area of origin as the workbench in the shipping and receiving room, based upon the burn pattern at that location, and the likely presence of a trash box holding discarded paper from shoe shipments in front of the workbench. Hiteshew then considered whether the ignition source was either in the building's structure or introduced from the outside.  In Hiteshew's opinion, the only possible structural source in the area of origin was the light fixture immediately above the workbench.  He ruled out the light fixture as the cause of the

---

[1] On October 17, 2001, L.C.L. Company ("LCL"), owner and manager of the Ridge Shopping Center where Saxon Shoes was located, also filed a motion for judgment against Blue Ridge alleging identical claims.  The trial court consolidated these actions for discovery purposes by order of March 11, 2002, and

fire because he concluded that "there is no evidence that an electrical fire could have occurred within the [light fixture] by itself. It had to have escaped from a source on the outside." Further, Hiteshew determined that "[t]he light fixture itself was positioned . . . significantly above . . . the area of origin." Thus, Hiteshew turned to a consideration of whether "some form of human action" could be the cause.

To determine the type of human activity that had the potential to cause the fire, Hiteshew "look[ed] at who was in the building and what potential there was for some type of human interaction that could be the heat source or fuel source." Hiteshew concluded that one such human ignition source could be disposal of smoking materials and that he had "to verify if a person [was] smoking" and "the fact that . . . there is a box of waste paper [in the area of origin] . . . suggests [the cause of the fire] could . . . be smoking." Hiteshew's ultimate conclusion was that "[t]he fire originat[ed] as a result of smoking material discarded into the trash can."

At trial, Hiteshew testified that this conclusion was supported by the evidence.

> [W]e had a pattern of concentrated damage that
> indicated the fire started in front of the work bench
> and slightly above floor level. The information that
> I obtained about the trash receptacle . . . in the

for trial by order of August 31, 2004. LCL settled with Blue Ridge on February 24, 2005, and is not a party to this appeal.

3

area of origin that had trash in it at the time, the statements that I read from depositions that indicated that there was a smoker in the facility and that he did smoke. . . . The fact that the fire originated in a container . . . is very consistent . . . [with] a fire originating in that location, lack of structural content for [another] ignition source, and the lack of any other identified human actions.

Hiteshew admitted, however, that "[n]obody observed [a Blue Ridge employee] smoke [in the building]." The deposition and trial testimony of Javier, Castro, and Garcia substantiates this admission. Javier testified that Yus was the only smoker on the crew, that all the crew members worked within sight of each other, and he did not see Yus smoke on the night of the fire. Castro also agreed that "when [she was] in the store, [she] didn't see anybody smoke." Garcia testified by deposition that Yus smoked outside the store before the crew started work. Garcia testified that Yus was "in [his] sight all the time" and that "[t]he only time that [he] couldn't see him was when he was in the offices." Officer Reinaldo Riopedre of the Henrico County Police Department testified about his interview with Yus after the fire. According to Riopedre's testimony, Yus said he was a smoker, and that "he smoked twice [the night of the fire] and that he went outside . . . ." There was no evidence in the record that a Blue Ridge employee smoked in the store.

4

At the close of Saxon's evidence, Blue Ridge moved to strike Saxon's evidence, or alternatively, Hiteshew's testimony because

> the opinions he has given . . . are based on an effort to contradict the direct evidence before the Court, and that his opinions are not based on an appropriate foundation of scientific facts.

Blue Ridge argued that Saxon failed to prove that the negligence of Blue Ridge employees was the proximate cause of the fire, and that Hiteshew's opinion testimony was without factual basis and should not have been admitted into evidence. The trial court denied both the motion to strike Hiteshew's testimony and the motion to strike Saxon's evidence. At the close of all the evidence, Blue Ridge renewed its motion to strike which the trial court again denied.

The jury returned a verdict in favor of Saxon and awarded damages of $5,139,617. Blue Ridge moved to set aside the verdict as contrary to the law and evidence. The trial court denied the motion and confirmed the verdict by order of January 31, 2005. We awarded Blue Ridge this appeal.

## II. ANALYSIS

On appeal, Blue Ridge assigns error to the trial court permitting Hiteshew to "assess the credibility of witnesses, to found his opinion on that assessment, and to present opinion testimony that was speculative . . . and unsupported by [the]

5

evidence." Blue Ridge contends the trial court abused its discretion in permitting Hiteshew to so testify.

Additionally, Blue Ridge assigns error to the trial court's denial of its motions to strike Saxon's evidence because Saxon did not present sufficient evidence to establish a prima facie case of negligence. Blue Ridge contends the trial court abused its discretion by failing to grant the motions to strike. Finally, Blue Ridge assigns error as an abuse of the trial court's discretion in denying motions to strike because Saxon was bound by the uncontradicted testimony of Blue Ridge employees called as adverse witnesses, who stated that no member of the cleaning crew smoked in the building on the night of the fire.

Saxon responds that Hiteshew had an adequate basis in fact upon which to give his opinion and that Saxon thus presented a prima facie case of negligence upon which the jury's verdict could stand.

### A. Hiteshew's testimony

It is well settled that this Court reviews the trial court's decision to admit expert testimony under an abuse of discretion standard. Tarmac Mid-Atlantic, Inc. v. Smiley Block Co., 250 Va. 161, 166, 458 S.E.2d 462, 465 (1995). Blue Ridge argues that Hiteshew's testimony was improperly admitted because Hiteshew wrongly assessed the credibility of witnesses and his

opinion was "speculative . . . and unsupported by the evidence." We agree with Blue Ridge that Hiteshew's opinion was without a basis supported by the evidence and was therefore speculative and unreliable as a matter of law. The trial court thus erred because it was an abuse of the trial court's discretion to admit Hiteshew's opinion testimony into evidence.[2]

The General Assembly has determined that "scientific, technical, or other specialize[d]" expert testimony is admissible into evidence if it "will assist the trier of fact to understand the evidence or to determine a fact in issue." Code § 8.01-401.3(A). In accordance with the statutory directive, this Court has approved admission of expert opinions into evidence where the jury is confronted with issues that require scientific or specialized knowledge or experience in order to be properly understood, and which cannot be determined intelligently merely from the deductions made and inferences drawn on the basis of ordinary knowledge, common sense, and practical experience gained in the ordinary affairs of life.

---

[2] Saxon's contention that Blue Ridge waived its challenge to the admissibility of Hiteshew's testimony on appeal because Blue Ridge introduced testimony as to the fire's cause and origin through Richard T. Chance is completely without merit. Blue Ridge did not contest Hiteshew's status as an expert witness, but rather that his particular opinion testimony was inadmissible as it was not supported by the evidence. The fact that Blue Ridge presented its own expert on fire origin has no relation to its objection to Hiteshew's opinion testimony and no nexus for any argument concerning "same character" evidence.

*Holmes v. John Doe*, 257 Va. 573, 578, 515 S.E.2d 117, 120 (1999) (citation omitted). However, when the issue to be decided involves matters of common knowledge or those as to which the jury is as competent to form an intelligent and accurate opinion as the expert witness, expert evidence is inadmissible. *Holcombe v. NationsBanc Fin. Servs. Corp.*, 248 Va. 445, 448, 450 S.E.2d 158, 160 (1994).

Thus, where the opinion of an expert is appropriate, such opinion must meet certain standards as a condition precedent to admission into evidence. "[E]xpert testimony . . . cannot be speculative or founded upon assumptions that have an insufficient factual basis. *Tittsworth v. Robinson*, 252 Va. 151, 154, 475 S.E.2d 261, 263 (1996) (citations omitted).

Hiteshew was qualified by the trial court as "an expert in fire origin and cause investigation," to which designation Blue Ridge does not assign error. Blue Ridge claims error to the admission of Hiteshew's ultimate opinion that the fire originated in the shipping and receiving room at the rear of the store and was caused "as a result of smoking material discarded into the trash can." Hiteshew primarily based his opinion as to the origin on the burn pattern on the wall of the shipping room. Hiteshew testified that he based the causation element of his opinion upon information he had received about the placement of a wastepaper box in the shipping and receiving room, a video

tape photograph of the area showing such a box, deposition statements that there was a smoker on the cleaning crew, and an admission by Yus that he smoked twice the night of the fire.

Blue Ridge's expert, Richard T. Chance, agreed with Hiteshew that the fire started in the back of the store, but disagreed as to the location and cause. Chance opined, concurring with the fire marshal, that the cause of the fire could not be determined. However, the variance in opinions of Hiteshew and Chance are not the basis of Blue Ridge's assignment of error. Blue Ridge contends that Hiteshew's opinion as to how the fire started is founded on assumptions which have no basis in fact and could not therefore be admitted into evidence.

Hiteshew testified that he based his opinion on the cause of the fire on the following:

> The information that I obtained about the trash receptacle being located [in] that area, the photograph from the video tape that suggests there was a box in the area of origin that had trash in it at the time, the statements that I read from depositions that indicated that there was a smoker in the facility and that he did smoke. Nobody observed him smoke, although he admitted smoking twice. The fact that the fire originated in a container that is very consistent and conducive to a fire originating in that location . . . .

Saxon argues there was sufficient evidence to support Hiteshew's opinion that the wastepaper box was by the workbench in the shipping room and contained wastepaper at the time of the fire. Blue Ridge contends Hiteshew merely assumed the box was

9

there without sufficient evidence.  Multiple witnesses testified at trial about the placement of the box.

James Roberts, Jr., general manager of Saxon, testified that "there's always a box in receiving to contain trash." Charles McNamara, the Saxon employee in charge of shipping and receiving, testified that on the evening of February 16, 2001, the day before the fire, that he emptied the trash box before he left at 5:30 p.m.  McNamara said that after he emptied the box, he would set it elsewhere so that people at the store on the weekend could not use it.

However, Gary Weiner, Saxon's CEO, testified that "[d]epending on the time of year, that box could be empty, or that box could be stuff [sic] because this is February [17th]." At that time of year, the store would receive heavy shipments of shoes to be checked into inventory with paper discarded in the box on the weekends as well as the weekdays.  Weiner also said that when he checked in shipments, he didn't always empty the box at the end of the day.  However, there is no indication in the record that Weiner was checking in shipments on any dates near the time of the fire.

Roberts agreed that it was "a custom of Mr. McNamara . . . to clean all of [the] trash out before [he] left."  Weiner testified that McNamara "empt[ies] that box out pretty religiously when he's there" but "that there were many days when

10

the box was not empty because he may not have been the last person to leave . . . ." Weiner admitted that the box "[p]ossibly" would have been empty the evening before the fire "unless somebody checked in [shipments] on Saturday when [McNamara] typically didn't work." Roberts testified that an employee called O'Bryan was stocking on the day of the fire and that he could not say whether O'Bryan emptied the box. O'Bryan did not testify and there is no other reference to him in the record.

Saxon offered into evidence a photo frame of video footage from the security camera in the shipping and receiving room. The photograph showed the wastepaper box near the workbench, but Weiner admitted that the picture did not show whether the box had any paper in it or that the box was in that spot on the evening of the fire. Weiner testified that the tape in the camera was changed every morning and that each tape is 24 or 36 hours long. While we note that evidence as to the placement of the wastepaper box at the time of the fire is not conclusive, there was positive evidence in the record which a trier of fact arguably could weigh to determine whether the box was present at the purported point of origin, under the workbench, at the time of the fire and contained wastepaper. We will assume, without deciding, that sufficient evidence existed upon which Hiteshew could conclude as part of his opinion that the wastepaper box

11

was under the workbench and contained wastepaper at the time of the fire.

However, even assuming that the wastepaper box was under the workbench at the time in question and provided the fuel source for the fire to establish the point of origin, the record does not support Hiteshew's ultimate opinion of "the fire originating as a result of smoking material discarded into the trash can" because "there was a smoker in the facility and . . . he did smoke."  In other words, there was insufficient evidence upon which Hiteshew could give an opinion as to causation.

Hiteshew testified that there were, in his opinion, two possible ignition sources for the fire: a structural source and human intervention.  Because he had ruled out the possibility that a light fixture or faulty wiring started the fire, he opined that a smoker on the cleaning crew negligently discarded a cigarette in the box and started the fire.

Hiteshew based this conclusion on his belief that the wastepaper box was under the workbench, and there was a smoker in the building when the fire started.  While Hiteshew never specifically stated that Yus discarded a cigarette into the wastepaper box, that this was a primary basis for his conclusion is clear based on his ultimate opinion of the fire's cause. Hiteshew came to his conclusion in spite of the fact that there were no witnesses who saw Yus smoking in the building and no

12

physical evidence of smoking in the building by Yus or any other Blue Ridge employee. In fact, Hiteshew opined that the lack of physical evidence of smoking material further supported his conclusion that a smoker in the building had caused the fire.

> Q But you never found any evidence of a cigarette?
>
> A Which is very suspicious . . . . It is very, very common not to find the [remnants] of cigarettes because it is a very small item that can disintegrate in a very small area.

But there was no factual basis in the record for Hiteshew's opinion on causation. Each member of the cleaning crew testified that he did not see Yus smoke in the building. Both Javier and Castro testified that Yus was the only smoker on the crew. The crew worked close together and no one observed a co-worker smoking inside the building.

Garcia testified by deposition that Yus was the only smoker on the crew and that he observed Yus smoking outside the building. Garcia testified that Yus was in his sight the entire time except when he was cleaning the offices.

Yus admitted to the fire marshal that he smoked twice on the night of the fire, both times outside the building. Yus said that both Javier and Roberts saw him. While Javier testified that he did not see Yus smoking outside the building, Garcia did. At trial, Roberts was not asked whether he saw Yus smoking.

13

The record contains no evidence that any employee of Blue Ridge smoked inside the building, much less put a burning cigarette into the trash box. Hiteshew's opinion is thus unsupported by the evidence. The record before us is devoid of any evidence upon which Hiteshew could conclude that a smoker on the cleaning crew caused the fire by tossing a cigarette in the wastepaper box. His conclusion that since Yus smoked on the night of the fire, he must have smoked inside and then discarded the cigarette in the trash box is pure speculation which we have repeatedly held is unreliable as a matter of law.

In Vasquez v. Mabini, 269 Va. 155, 159-61, 606 S.E.2d 809, 811-12 (2005), we held that an expert's testimony in a wrongful death action as to the decedent's expected loss of income and the economic value of the loss of her services was inadmissible as it was "speculative" and "founded upon assumptions that [had] no basis in fact." Id. at 160-61, 606 S.E.2d at 811-12. The expert based his lost income calculation on his assumption that the decedent, who was unemployed at her death and had never earned more than $7,000 per year, would secure fulltime clerical work the next day, at a salary of $16,000 per year and receive a retirement benefit of 3.7% and an annual raise of 4.25%. Id. In calculating the economic value of the loss of her services, the expert opined that the decedent's disabled son, who depended upon her for much of his care, would live throughout his

14

mother's remaining life, even though he died prior to trial. Id. at 161, 606 S.E.2d at 812. The trial court erred in admitting that testimony from the expert as it lacked an evidentiary basis in the record.

Similarly, in Countryside Corp. v. Taylor, 263 Va. 549, 553, 561 S.E.2d 680, 682 (2002), we held that an expert real estate appraiser's damages calculation was inadmissible because it was based in part on the failure of an access road to abut the plaintiffs' property. However, the defendants had conveyed land to the plaintiffs prior to trial so that the road did abut their property, and the expert's opinion was thus based on speculation contrary to the facts. The trial court erred for that reason in admitting the experts testimony.

In both Vasquez and Countryside, we noted that when an expert " 'assume[s] a fiction and base[s] his opinion of damages upon that fiction[,]' . . . that testimony [is] 'speculative and unreliable as a matter of law.' " Vasquez, 269 Va. at 161, 606 S.E.2d at 812 (citing Countryside, 263 Va. at 553, 561 S.E.2d at 682). In the case at bar, Hiteshew assumed, contrary to Yus' statement and the testimony of the other Blue Ridge employees, that Yus smoked in the store and discarded smoking material in the wastepaper box. Unlike the evidence with regard to the location of the wastepaper box, there is no positive evidence in the record which the jury could weigh to determine whether a

15

Blue Ridge employee discarded smoking material in the wastepaper box.  Thus, Hiteshew's assumption is not supported by the evidence, and his causation opinion based on that assumption is inadmissible as a matter of law.  See id.

The trial court abused its discretion by permitting Hiteshew's testimony on the cause of the fire to come into evidence and go to the jury.  The trial court thus erred in not granting Blue Ridge's motion to strike Hiteshew's testimony as to the cause of the fire.

### B.    Motion to Strike the Evidence

Blue Ridge further contends Saxon failed to establish actionable negligence as a matter of law and thus, the trial court erred in not granting Blue Ridge's motion to strike Saxon's evidence and enter a verdict for Blue Ridge.  We review the trial court's decision to deny the motion to strike in accordance with well-settled principles.

> When the sufficiency of a plaintiff's evidence is challenged by a motion to strike, the trial court should resolve any reasonable doubt as to the sufficiency of the evidence in plaintiff's favor and should grant the motion only when "it is conclusively apparent that plaintiff has proven no cause of action against defendant," or when "it plainly appears that the trial court would be compelled to set aside any verdict found for the plaintiff as being without evidence to support it."

Williams v. Vaughan, 214 Va. 307, 309, 199 S.E.2d 515, 517 (1973) (citations omitted).  Examining the evidence in the light

16

most favorable to Saxon, we find that Saxon has failed to establish a prima facie case of negligence against Blue Ridge.

The elements of an action in negligence are a legal duty on the part of the defendant, breach of that duty, and a showing that such breach was the proximate cause of injury, resulting in damage to the plaintiff. Trimyer v. Norfolk Tallow Co., 192 Va. 776, 780, 66 S.E.2d 441, 443 (1951). "The proximate cause of an event is that act or omission which, in natural and continuous sequence, unbroken by an efficient intervening cause, produces the event, and without which that event would not have occurred." Beale v. Jones, 210 Va. 519, 522, 171 S.E.2d 851, 853 (1970). The evidence tending to show causal connection must be sufficient to take the question out of the realm of mere conjecture, or speculation, and into the realm of legitimate inference, before a question of fact for submission to the jury has been made out. Id. "It is incumbent on the plaintiff who alleges negligence to show why and how the accident happened, and if that is left to conjecture, guess or random judgment, he cannot recover." Weddle v. Draper, 204 Va. 319, 322, 130 S.E.2d 462, 465 (1963).

Because Hiteshew's opinion as to the cause of the fire was inadmissible, Saxon presented no evidence that Blue Ridge breached any duty to Saxon and no evidence of a proximate cause attributable to Blue Ridge. Assuming Saxon proved the fire

17

started in the trash box, it had no evidence, without Hiteshew's opinion, to make the connection to Blue Ridge, as the cause of the fire. This failure of proof represents the absence of a prima facie case of negligence which could be submitted to the jury.

Thus, the trial court abused its discretion when it denied Blue Ridge's motion to strike Saxon's evidence. That abuse of discretion was reversible error by the trial court.

### III. CONLCUSION

Hiteshew's opinion testimony as to the cause of the fire was inadmissible because it was not supported by the evidence and thus was purely speculative. The trial court therefore erred in denying Blue Ridge's motions to exclude this portion of Hiteshew's testimony. Without Hiteshew's causation testimony, Saxon did not make a prima facie case of negligence by Blue Ridge because it could not prove either a breach of duty or proximate cause related to Blue Ridge. Thus, the trial court also erred in denying Blue Ridge's motion to strike Saxon's evidence. Accordingly, we will reverse the judgment of the trial court and enter final judgment for Blue Ridge.[3]

---

[3] Because we reverse the trial court's judgment for the foregoing reasons and enter final judgment for Blue Ridge, we do not address Blue Ridge's remaining arguments that the trial court allowed Hiteshew to assess the credibility of witnesses or that Saxon was bound by the testimony of the Blue Ridge employees as adverse witnesses.

18

Reversed and final judgment.