Present: All the Justices

JOSEPH EGAN, SR.

v.   Record No. 141365

DAVID BUTLER

ABILENE MOTOR EXPRESS CO.

v.   Record No. 141372

DAVID BUTLER

OPINION BY
JUSTICE LEROY F. MILLETTE, JR.
June 4, 2015

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Margaret P. Spencer, Judge

In these appeals we consider whether evidence of work history and quality of past job performance is probative of future lost income damages, and whether the evidence introduced at trial was sufficient to subject a corporate employer to punitive damages liability.

I.   FACTS AND PROCEEDINGS

David Lamont Butler worked as a diesel mechanic at Abilene Motor Express Company, where Joseph F. Egan, Sr., was Butler's supervisor.  After working at Abilene for three months, Butler was fired by Egan for unsatisfactory job performance.  Although the circumstances of that termination are subject to differing accounts by the parties, the situation was undisputedly heated.

The same day that Butler was fired, Egan swore out a misdemeanor assault and battery complaint against Butler for events that allegedly occurred immediately after Butler's

termination.  The following day, Egan told other Abilene employees that Butler had pushed Egan and that Butler had cut or stabbed Egan.  The misdemeanor assault and battery charge was dismissed with prejudice several months later.

Based on these circumstances, Butler filed a complaint against Egan and Abilene alleging one count of malicious prosecution and one count of defamation.  Under both claims Butler sought compensatory damages, including future lost income, and punitive damages.

Butler's claims went to a jury trial.  After hearing witness testimony and considering the evidence, the jury returned a verdict in favor of Butler.  On the malicious prosecution claim, the jury awarded Butler $250,000 in compensatory damages, and $50,000 in punitive damages against Egan and $200,000 in punitive damages against Abilene.  In compliance with Code § 8.01-38.1, the circuit court reduced the punitive damages award against Egan to $38,850 and the punitive damages award against Abilene to $155,600.  On the defamation claim, the jury awarded Butler $200,000 in compensatory damages, and $50,000 in punitive damages against Egan and $150,000 in punitive damages against Abilene.  In compliance with Code § 8.01-38.1, the circuit court reduced the punitive damages award against Egan to $38,850 and the punitive damages award against Abilene to $116,700.  Apart from reducing the

punitive damages awards, the circuit court entered final judgment on the jury's verdicts against Egan and Abilene.

Egan and Abilene separately filed timely appeals with this Court.

## II.   DISCUSSION

### A.   Future Lost Income

Egan's assignment of error 1 and Abilene's assignment of error 1 are identical, and read:

> The trial court erred when it (1) excluded evidence of Butler's past employment history and (2) when it excluded evidence of the quality of Butler's job performance

### 1.   Standard of Review

"We review a trial court's decision to admit or exclude evidence using an abuse of discretion standard and, on appeal, will not disturb a trial court's decision to [exclude] evidence absent a finding of abuse of that discretion."  Harman v. Honeywell Int'l, Inc., 288 Va. 88, 92, 758 S.E.2d 515, 520 (2014) (internal quotation marks, citation, and alterations omitted).  "In a civil case, the erroneous exclusion of evidence is reversible error when the record fails to show plainly that the excluded evidence could not have affected the verdict."  Barkley v. Wallace, 267 Va. 369, 374, 595 S.E.2d 271, 274 (2004).

3

2.   The Excluded Evidence Is Probative Of Future Lost Income

At trial, the circuit court denied entry of evidence pertaining to Butler's work history on the basis that it was irrelevant to determining Butler's future lost income.  The circuit court also denied entry of evidence pertaining to the quality of Butler's past job performance.  This was error.

"In order to form a reliable basis for a calculation of future lost income or loss of earning capacity, such evidence must be grounded upon facts specific to the individual whose loss is being calculated."  Bulala v. Boyd, 239 Va. 218, 233, 389 S.E.2d 670, 677 (1990).  "Although mathematical precision is not required, the plaintiff must furnish evidence of sufficient facts or circumstances to permit at least an intelligent and probable estimate of [such] damages."  Id. at 232-33, 389 S.E.2d at 677 (internal quotation marks and citation omitted).

To this end, we have held that an expert's opinion about future lost income or future lost earning capacity is inadmissible when such testimony fails to consider the plaintiff's work history.  E.g., Vasquez v. Mabini, 269 Va. 155, 160-61, 606 S.E.2d 809, 811-12 (2005); Greater Richmond Transit Co. v. Wilkerson, 242 Va. 65, 71-72, 406 S.E.2d 28, 33 (1991).  The inverse of the principle expressed in these cases applies here:  that is, a plaintiff's work history and quality

4

of past job performance is admissible evidence probative of the plaintiff's claimed damages in the form of future lost income or future lost earning capacity.  See Virginia Rule of Evidence 2:401 ("'Relevant evidence' means evidence having any tendency to make the existence of any fact in issue more probable or less probable than it would be without the evidence."); Virginia Rule of Evidence 2:402 ("All relevant evidence is admissible, except as otherwise provided by . . . statute, Rules of the Supreme Court of Virginia, or other evidentiary principles."); Breeden v. Roberts, 258 Va. 411, 416, 518 S.E.2d 834, 837 (1999).

This is the very type of evidence Egan and Abilene sought to introduce but which the circuit court excluded as irrelevant.  Specifically, the court excluded evidence of Butler's work history from 1999 to 2010, including proof relating to his employers, employment dates, pay rates, and reasons for leaving the job.  The court also excluded evidence of the quality of Butler's past job performance.  In each instance, the court held that evidence of past work had no bearing on future income.  Utilizing this incorrect legal standard to bar admission of relevant evidence was an abuse of discretion.  Lawlor v. Commonwealth, 285 Va. 187, 212-13, 738 S.E.2d 847, 861-62 (2013).

3.    The Error Is Not Harmless

Reversal is required because this excluded evidence, probative of Butler's future lost income, could have affected the verdict.  Barkley, 267 Va. at 374, 595 S.E.2d at 274.  Two principles arising from related circumstances, in which we addressed the issue of speculative future lost income, underscore this point.

First, we have held that expert testimony regarding future lost income is too speculative to go to the jury when the expert's opinion is based upon too scant of a work history.  Compare Cassady v. Martin, 220 Va. 1093, 1095-96, 1100, 266 S.E.2d 104, 104-05, 108 (1980) (8 weeks of work history insufficient to make 21 year old decedent's 44 years of future lost income not speculative), with Clark v. Chapman, 238 Va. 655, 665-67, 385 S.E.2d 885, 891-92 (1989) (6 weeks of work history, in addition to a minimal and intermittent string of jobs, sufficient to make 41 year old plaintiff's 11 years of future lost income not speculative).

Second, in the context of remedying wrongful termination pursuant to the Virginia Fraud Against Taxpayers Act, Code § 8.01-216.1 et seq., we have observed that "the longer the period over which front pay is requested, the more speculative a front pay award becomes."  Lewis v. City of Alexandria, 287 Va. 474, 483 n.7, 756 S.E.2d 465, 471 n.7 (2014).

6

Directed to the circumstances of this case, these principles establish that a jury award for future lost income damages must be predicated upon evidence sufficiently establishing the plaintiff's work history and continuing ability to work absent the wrongful actions of the defendant, so that such an award is not impermissibly speculative. Further, the degree of evidence required to remove the award from the realm of impermissible speculation corresponds to the amount of time the future lost income damages cover. That is, the longer the timeframe of future lost income claimed, the more significant the evidentiary basis required to support such an award.

At trial, Butler did not call an expert witness to testify as to damages, but testified on his own behalf as a fact witness. Butler claimed approximately 23 years of lost future income totaling $137,842. Butler based this claim upon the difference between his $18 per hour wage at Abilene and his lower hourly wage with a subsequent employer – a difference totaling approximately $6,000 per year – and multiplied that figure by the approximately 23 years until when Butler planned to retire at age 65.[1] Accordingly, by excluding the very

---

[1] Though not material to our analysis, we note that Butler testified at trial that he was 43 years of age, about to turn 44, suggesting a projected work life to age 65 of less than 23 years.

evidence that Egan and Abilene sought to introduce, the circuit court made this future lost income claim more speculative than if such evidence had been admitted. When the record shows that excluded evidence would have made an award less speculative, such evidence could have affected the verdict so as to require reversal. Barkley, 267 Va. at 374, 595 S.E.2d at 274.

We decline to affirm, as Butler argues, under the "right result for the wrong reason" doctrine. Under that doctrine, "however erroneous may be the reasons of the court for its judgment upon the face of the judgment itself, if the judgment be right, it will not be disturbed on account of the reasons." Perry v. Commonwealth, 280 Va. 572, 579, 701 S.E.2d 431, 435 (2010) (internal quotation marks, citation, and alterations omitted). Butler makes two arguments for such affirmance, and we disagree with both.

First, Butler argues that the excluded evidence is more prejudicial than probative, as it "make[s] Butler out to be unreliable, when he [is] not." However, if that is what the evidence shows, then that is simply the nature of the evidence. The excluded evidence remains highly probative to establish the amount of Butler's future lost income. "Evidence that is highly probative invariably will be prejudicial to the [opposing party]." United States v. Grimmond, 137 F.3d 823, 833 (4th Cir. 1998). Virginia Rule of Evidence 2:403(a) only

8

authorizes the trial court to exclude relevant evidence when the probative value is substantially outweighed by the danger of <u>unfair</u> prejudice.  Any prejudice in the form of the jury's perception of Butler's future employment prospects, arising from this excluded evidence which tends to more accurately establish Butler's future lost income, is not unfair prejudice such that its admission could properly be barred under Virginia Rule of Evidence 2:403(a).

Second, Butler argues that the substance of the excluded evidence is duplicative of other evidence admitted into the record, by way of exhibits or witness testimony, which the jury was already entitled to consider.  However, upon review of the record, we find that the excluded evidence is sufficiently different in kind and degree with such admitted evidence so that its admission would not be barred under Virginia Rule of Evidence 2:403(b) as <u>needlessly</u> cumulative.

B.    <u>Punitive Damages Liability</u>

Abilene's assignment of error 3 reads:

The trial court erred when it denied Abilene's Motion to Strike the Punitive Damages Claims – and instructing the jury on punitive damages – as to Abilene. There was no evidence that Abilene had authorized or ratified Egan's actions in filing the criminal charges against Butler or the statements Egan made, and Butler never even pled any ratification or authorization.

9

1.   Standard Of Review

When reviewing a circuit court's decision on a motion to strike, we must "review the evidence in the light most favorable to the non-moving party." Kiddell v. Labowitz, 284 Va. 611, 629, 733 S.E.2d 622, 632 (2012). That is, the non-moving party must be given "the benefit of all substantial conflict in the evidence, and all fair inferences that may be drawn therefrom." Hadeed v. Medic-24, Ltd., 237 Va. 277, 281, 377 S.E.2d 589, 590 (1989) (internal quotation marks and citation omitted).

The object of our review depends upon the circuit court's treatment of the motion to strike. Where, as here, the circuit court denied the motion to strike, we must review the evidence to determine if that action was in error because either "it is conclusively apparent that [the] plaintiff has proven no cause of action against [the] defendant," or "it plainly appears that the [circuit] court would be compelled to set aside any verdict found for the plaintiff as being without evidence to support it." Blue Ridge Serv. Corp. v. Saxon Shoes, Inc., 271 Va. 206, 218, 624 S.E.2d 55, 62 (2006) (internal quotation marks and citation omitted).

To the extent we determine what type of evidence must be presented, as an initial matter, to subject an employer to the possibility of punitive damages liability for the actions of an

10

employee is a question of law we review de novo.  Cf. Shevlin Smith v. McLaughlin, __ Va. __, __, 769 S.E.2d 7, 17 (2015) ("Whether a factual issue constitutes a prima facie element of a claim . . . is a question of law reviewed de novo.").

2.  Punitive Damages Liability Against A Corporate Employer

The circuit court denied Abilene's motion to strike Butler's claims for punitive damages against Abilene.  This was error.

A corporate employer may be liable for the compensatory damages caused by the acts of its employees when such actions are done "in the scope of [the employee's] employment and which grow out of an act connected with the employment." Oberbroeckling v. Lyle, 234 Va. 373, 381-82, 362 S.E.2d 682, 687 (1987).  The analysis for determining whether a corporate employer may be liable for punitive damages, however, is different.

"A principal, . . . though of course liable to make compensation for the injury done by his agent, within the scope of his employment, cannot be held for . . . punitive damages, merely by reason of wanton, oppressive[,] or malicious intent on the part of the agent."  Hogg v. Plant, 145 Va. 175, 180, 133 S.E. 759, 760 (1926) (internal quotation marks and citation omitted).  Consequently, "punitive damages cannot be awarded against a master or principal for the wrongful act of his

11

servant or agent in which he did not participate, and which he did not authorize or ratify."  Id. at 181, 133 S.E. at 761. Alternatively stated, punitive damages may be awarded against a corporate employer only if either (1) that employer participated in the wrongful acts giving rise to the punitive damages, or (2) that employer authorized or ratified the wrongful acts giving rise to the punitive damages.[2]  Hewes v. Doddridge, 40 Va. (1 Rob.) 143 (1842) (monographic note) (citing Lake Shore & M. S. Ry. Co. v. Prentice, 147 U.S. 101 (1893)).  The evidence at trial failed to establish that Abilene either engaged in, or authorized or ratified, Egan's alleged wrongful conduct.

a.    Punitive Damages Liability When The Corporate Employer
      Participated In The Wrongful Acts

Although our case law establishes that an employer is subject to punitive damages liability if it participates in the wrongful acts, we have not gone further to address how to determine whether a corporate employer itself is acting for

_____

[2] Butler argues that Abilene waived and conceded this issue by failing to object to, and by stipulating to, the fact that Egan was operating within the scope of Abilene's employment when he engaged in the wrongful acts giving rise to the punitive damages awards.  This, of course, is important for purposes of establishing Abilene's vicarious liability for compensatory damages.  But the fact that Egan was acting within the scope of his employment is not dispositive as to Abilene's liability for punitive damages.  Butler ignores this distinction, but once made, Butler's arguments of waiver and concession are meritless.

12

purposes of punitive damages liability.  Instead, we have repeatedly focused only on the separate avenue of establishing an employer's punitive damages liability by ascertaining whether a corporate employer authorized or ratified an employee's wrongful conduct.  See, e.g., Freeman v. Sproles, 204 Va. 353, 358, 131 S.E.2d 410, 414 (1963); W. T. Grant Co. v. Owens, 149 Va. 906, 913, 141 S.E. 860, 862-63 (1928).

Butler argues that any action of any employee taken on behalf of a corporate employer is necessarily the action of the corporate employer.  After all, Butler continues, a corporate employer such as Abilene "can only act through agents" such as Egan.  Bardach Iron & Steel Co. v. Charleston Port Terminals, 143 Va. 656, 672, 129 S.E. 687, 692 (1925).  Consequently, Butler contends that any employee's action is the corporate employer's action for purposes of punitive damages liability. We hold that this position is inconsistent with established Virginia law, as it would render obsolete establishing a corporate employer's punitive damages liability by way of proving the employer's authorization or ratification of an employee's wrongful conduct.

Instead, to subject a corporate employer to punitive damages liability on the basis that the corporate employer itself committed the wrongful acts, the employee who committed the wrongful acts must be in a sufficiently high position in

13

the employer's corporate structure.  Restatement (Second) of Torts § 909 ("Punitive damages can properly be awarded against a master or other principal because of an act by an agent if . . . (c) the agent was employed in a managerial capacity and was acting in the scope of employment."); see also, e.g., Hodges v. Gibson Prods. Co., 811 P.2d 151, 163 (Utah 1991); Sweet v. Roy, 801 A.2d 694, 713-14 (Vt. 2002).

We hold that this standard applies in Virginia.  The question then becomes, how high a position in the corporate ranks is sufficient to make the actions of an employee the actions of the corporate employer?  This is a fact-sensitive question, dependent upon the power, role, and independence of the employee relative to the nature and structure of the corporate employer.  See Bardach, 143 Va. at 672, 129 S.E. at 692 ("[When an agent] is a permanent employee or officer of the company, the question as to the authority and power of such a representative should be left to the jury, unless the evidence shows that this authority on the occasion in question was necessarily limited."); see also White v. Ultramar, Inc., 981 P.2d 944, 954 (Cal. 1999) ("[S]upervisors who have broad discretionary powers and exercise substantial discretion authority in the corporation could be managing agents. Conversely, supervisors who have no discretionary authority over decisions that ultimately determine corporate policy would

14

not be considered managing agents even though they may have the ability to hire or fire other employees."); <u>Chavarria v. Fleetwood Retail Corp. of N.M.</u>, 143 P.3d 717, 725 (N.M. 2006) ("An employee has managerial capacity if he or she has the discretion or authority to speak and act independently of higher corporate authority." (internal quotation marks and citation omitted)). We therefore decline to create a bright-line rule, and instead supply the facts of this case for future guidance.

The record shows that Egan had been working at Abilene for four and a half years, and was the Director of Maintenance. As Director of Maintenance, Egan "did the hiring and firing and scheduling work. [He] was in charge of [Abilene's] entire fleet as far as maintenance, purchasing." This is the totality of evidence establishing Egan's position within Abilene's corporate structure. As a matter of law, this limited evidence is insufficient to establish whether Egan was in a sufficiently high position within Abilene's business structure so that employee Egan's actions were actually the corporate employer Abilene's actions for purposes of punitive damages liability.

Butler makes additional arguments for why Abilene itself committed the alleged acts of malicious prosecution and defamation. We remain unpersuaded.

15

First, Butler points to the fact that the dismissal of Egan's criminal complaint against Butler was accompanied by Butler's agreement to stay off of Abilene's property for an extended period of time. Butler argues that this establishes that Abilene "benefitted" from the criminal action, and thus Abilene was "involve[d] in the criminal case." Butler also points to the fact that it was Abilene's president, Keith Jones, who notified Butler that a warrant had been issued for Butler's arrest. However, the fact that an aspect of the criminal action related to Abilene's property, without further evidence of Abilene's alleged involvement with the criminal action, does not establish that Abilene itself engaged in malicious prosecution or defamation. Similarly, the fact that Abilene's president was aware of the existence of a warrant does not establish that Abilene itself engaged in malicious prosecution or defamation.

Second, Butler points to the fact that various videotapes which should have recorded the areas of Abilene's property where Butler's termination and any subsequent altercation occurred remained in possession of Abilene and were accessible by Abilene's president. But mere possession of such videotapes does not establish that Abilene itself engaged in malicious prosecution or defamation.

Seeking to bolster his point, Butler repeats his argument from trial that these tapes were destroyed or altered, because either the video does not show certain locations that should have been recorded, or the video of what is recorded is missing events that actually occurred.  Even accepting as true the premise that someone destroyed or altered the relevant videotapes, the record here fails to establish that such party was Abilene.  Such evidence alone does not establish that Abilene destroyed or altered the tapes, and this evidence does not establish that Abilene itself engaged in malicious prosecution or defamation.

Third, Butler argues that because Abilene knew that the unaltered videotapes exonerated Butler, but did nothing to stop Egan's malicious prosecution or Egan's defamation, Abilene was therefore sufficiently involved with the malicious prosecution and defamation so that Abilene engaged in such wrongful conduct.  However, accepting as true that the record is sufficient to warrant an inference that Abilene was aware of the substance of the unaltered videotapes, the record does not establish that Abilene itself engaged in malicious prosecution or defamation.  It may be – but we need not establish for purposes of Virginia law – that the "person who places before a prosecuting officer information upon which criminal proceedings are begun" has "an obligation to disclose" the discovery of

17

"additional information casting doubt upon the accused's guilt." Clarke v. Montgomery Ward & Co., 298 F.2d 346, 348 (4th Cir. 1962) (establishing such a rule for federal courts in Virginia while recognizing that "there appear to be no Virginia cases specifically [on] point"). But such a duty would apply only to Egan, who filed the misdemeanor complaint against Butler, and whose actions are not those of Abilene. And we have never held that a third party, such as Abilene, who fails to disseminate truth to counteract the false defamation published by another, such as Egan, will be considered to have engaged in another's defamatory act.

For these reasons, at the time of Abilene's motion to strike, it plainly appears that the circuit court would have been compelled to set aside, as being without evidence to support it, any punitive damages verdict found for Butler against Abilene based on the theory that Egan's actions were actually the actions of Abilene. Blue Ridge, 271 Va. at 218, 624 S.E.2d at 62.

b. Punitive Damages Liability When The Corporate Employer Authorized Or Ratified The Wrongful Acts

Butler did not plead, and failed to introduce any evidence at trial to prove, that Abilene authorized or ratified Egan's alleged actions of malicious prosecution and defamation. For these reasons, at the time of Abilene's motion to strike, it

18

plainly appears that the circuit court would have been compelled to set aside, as being without evidence to support it, any punitive damages verdict found for Butler against Abilene based on the theory that Egan's actions were authorized or ratified by Abilene.  Id.

C.   Proceedings On Remand

In light of these errors,[3] Egan and Abilene request a new trial upon remand.  Determining the nature of the proceedings upon remand is informed by our actions on appeal, which in turn are guided by assignments of error.  Accordingly, the analysis starts with the parties' assignments of error.

Rule 5:17(c)(1) requires an appellant to assign error to a "ruling[] below."  Only "sufficient" assignments of error are recognized by this Court.  Rule 5:17(c)(1)(iii).  "A litigant's failure to include any sufficient assignments of error in a petition for appeal can deprive this Court of active

---

[3] We do not address Egan's and Abilene's identical assignments of error 2, regarding whether Butler's future lost income awards were too speculative.  Egan and Abilene failed to adequately brief this issue, and it is waived.  Muhammad v. Commonwealth, 269 Va. 451, 478, 619 S.E.2d 16, 31 (2005).
We do not address Egan's assignment of error 3 and Abilene's assignment of error 4, regarding whether the compensatory damage verdicts were duplicative; Egan's assignment of error 4 and Abilene's assignment of error 6, regarding whether the verdicts should have been set aside; and Abilene's assignment of error 5, regarding whether the punitive damages awarded against an employer can exceed the punitive damages awarded against an employee.  Our holdings on appeal render it unnecessary to resolve these issues.  Jimenez v. Corr, 288 Va. 395, 404, 764 S.E.2d 115, 118 (2014).

19

jurisdiction to consider the appeal." Amin v. County of Henrico, 286 Va. 231, 236, 749 S.E.2d 169, 171 (2013) (emphasis added). However, so long as an assignment of error is sufficient, this Court has jurisdiction to consider the appeal.

A sufficient assignment of error puts before this Court an "alleged error" committed by the court below. Rule 5:17(c)(1). That alleged error defines the focus of what this Court can address on appeal. See, e.g., Sarafin v. Commonwealth, 288 Va. 320, 323 n.1, 764 S.E.2d 71, 73 n.1 (2014). After all, "when a party fails to assign error to a particular holding by the circuit court, that holding becomes the law of the case and is binding on appeal." Maine v. Adams, 277 Va. 230, 242, 672 S.E.2d 862, 869 (2009). Thus, for example, Egan's and Abilene's assignments of error 1 put before this Court the circuit court's action of excluding evidence, and Abilene's assignment of error 3 put before this Court the circuit court's action of denying a motion to strike. By way of these assignments of error, we have authority to address whether those actions were in error and, because they were, to reverse the circuit court's actions.

Once we identify and reverse actions taken in error, and remand is required, we must ascertain the appropriate nature of such remand proceedings. The nature of remand proceedings may be governed either by statute or by this Court's holding of

error on appeal; or, in the absence of such sources mandating a specific form of proceedings, the lower court retains discretion to resolve outstanding issues in the manner it sees fit. Bailey v. Loudoun Cnty. Sheriff's Office, 288 Va. 159, 181-82, 762 S.E.2d 763, 774 (2014). When the nature of remand proceedings is governed by our holding of error on appeal, we must determine what portions of the lower court proceedings were affected by such error. And it is those proceedings, tainted by error, which must be accomplished anew upon remand. See, e.g., Velocity Express Mid-Atlantic v. Hugen, 266 Va. 188, 203, 585 S.E.2d 557, 566 (2003) (error in allowing a prejudicial closing argument to a jury in a non-bifurcated trial typically requires remand of a new trial on all issues, but specific circumstances of the case required only a new trial on damages); Rawle v. McIlhenny, 163 Va. 735, 747-50, 177 S.E. 214, 220-21 (1934) (discussing how an appeal should be resolved in five different scenarios of when a plaintiff challenges the sufficiency of a verdict on an appeal).

In this case, remand proceedings are governed by our holdings of error on appeal. Pursuant to Abilene's assignment of error 3, we hold that the circuit court erred in denying Abilene's motion to strike Butler's claims for punitive damages against Abilene. Any issues falling within the scope of that motion to strike are subject to final judgment. See Isle of

21

Wight Cnty. v. Nogiec, 281 Va. 140, 156, 704 S.E.2d 83, 91 (2011); Blue Ridge, 271 Va. at 219, 624 S.E.2d at 62. Thus, Abilene is not subject to punitive damages on remand, and Butler is foreclosed from presenting evidence to establish Abilene's punitive damages liability.

Pursuant to Egan's and Abilene's assignments of error 1, we hold that the circuit court erred in excluding evidence probative of Butler's future lost income. The nature of the circuit court's action, embodied in the assignment of error, is not itself confined to a specific segment of the trial. Contra Baker v. Carrington, 138 Va. 22, 23-25, 120 S.E. 856, 856-57 (1924) (plaintiff assigned error to lower court's striking words from a jury instruction relating to punitive damages, and thus the error affected only damages rather than liability). Instead, the nature of our holding of error on appeal is confined to a specific segment of the trial.

The circuit court's action of excluding certain evidence was error because such evidence was probative of Butler's future lost income. The issue of future lost income is an issue relating to a plaintiff's compensatory damages. See, e.g., Lewis-Gale Med. Ctr., LLC v. Alldredge, 282 Va. 141, 147, 710 S.E.2d 716, 719 (2011). Thus, our holding of error on appeal necessitates a new trial as to Butler's compensatory

22

damages upon remand.  Egan and Abilene, however, argue that the reach of remand proceedings should go further.  We disagree.

First, Egan and Abilene argue that our holding also impacts issues of liability as this excluded evidence may have affected the jury's assessment of Butler's credibility.  Egan and Abilene contend that, contrary to this excluded evidence, Butler claimed at trial that he had been a well-regarded truck mechanic before Egan damaged his reputation.  Thus, as Butler testified regarding Egan's and Abilene's liability, improperly excluded evidence impacting the credibility of a liability witness is an error that may have affected the jury's determination of liability.  Ryan v. Maryland Casualty Co., 173 Va. 57, 62-63, 3 S.E.2d 416, 418-19 (1939).

We cannot endorse Egan's and Abilene's position because we cannot reach the issue of whether this evidence relates to Butler's credibility.  This issue was never argued before the circuit court as a basis to allow admission of the evidence. Therefore, basic rules of appellate procedure prevent us from reaching this particular issue.  Rule 5:25; Morgen Indus., Inc. v. Vaughan, 252 Va. 60, 67-68, 471 S.E.2d 489, 493 (1996); Fisher v. Commonwealth, 236 Va. 403, 414, 374 S.E.2d 46, 52 (1988).  We will not circumvent these rules to address an otherwise waived issue simply because we have found that the

circuit court's action to which the issue relates was error on another basis.

Second, we note that Abilene observed during oral arguments that any retrial of compensatory damages necessarily requires a retrial of punitive damages because "an award of compensatory damages is an indispensable predicate for an award of punitive damages, except in actions for libel and slander." Syed v. ZH Techs., Inc., 280 Va. 58, 74-75, 694 S.E.2d 625, 634 (2010) (internal quotation marks, citation, and alteration omitted). It is true that we will vacate a punitive damages award predicated upon a vacated compensatory damages award if such relief falls within the scope of an assignment of error and is adequately argued on appeal. See, e.g., Murray v. Hadid, 238 Va. 722, 732, 385 S.E.2d 898, 905 (1989). But we need not address whether Abilene's assignment of error 1 compels a retrial of punitive damages as against Abilene because, as we have held, Abilene's assignment of error 3 removes that issue from retrial. Moreover, we do not address whether Egan's assignment of error 1 compels a retrial of punitive damages as against Egan because Egan waived the issue at oral argument by conceding that he was "not contesting" the punitive damages awards, and that the punitive damages awards did not fall within the scope of his assignments of error.

24

## III. CONCLUSION

The circuit court erred in excluding evidence probative of Butler's future lost income.  That error may have affected the jury's determination of Egan's and Abilene's compensatory damages.  We therefore will reverse that portion of the circuit court's judgment and remand for a new trial on compensatory damages against Egan and Abilene.

The circuit court also erred in denying Abilene's motion to strike Butler's punitive damages claims.  We therefore will reverse that portion of the circuit court's judgment and enter final judgment in favor of Abilene regarding Butler's punitive damages claims.  Abilene's punitive damages liability is not subject to retrial.

Our holdings do not disturb the circuit court's affirmance of the jury's finding of Egan's and Abilene's liability.  Our holdings do not disturb the circuit court's entry of the punitive damages awards against Egan.  These issues are not subject to retrial on remand.

<u>Reversed and remanded in part, and final judgment in part.</u>

25