GREATER RICHMOND TRANSIT COMPANY, ET AL.

V.

CLEMENTINE M. WILKERSON

Record No. 901183

June 7, 1991

Present: All the Justices

66

Beverly A. Burton, Assistant City Attorney.
Brenda L. Page (Karen G. Eggleston, on brief), for appellee.

JUSTICE WHITING delivered the opinion of the Court.

This is a personal injury case against a common carrier. It presents questions concerning the sufficiency and admissibility of evidence and the propriety of certain jury instructions.

On May 12, 1989, Tyrus R. Edwards parked a 1988 Flexible Series bus owned by her employer, Greater Richmond Transit Company, at a bus stop in the parking lot of Regency Mall in Henrico County. Because she had a 15-minute layover, Edwards left the bus and went into the mall. As she and other bus drivers had often done in the past, Edwards left the front door of the bus open to enable prospective passengers to enter, await the driver's return, and pay their fares.

Several such riders, including Clementine M. Wilkerson, entered the bus and seated themselves, awaiting Edwards's return. A few minutes after they were seated, the bus started rolling backward. All the riders jumped off the rolling bus, and Wilkerson sustained a broken leg when she hit the ground.

Upon Edwards's return, she found that the bus had rolled over the curb into which she had turned its front wheels, traveled some distance, and struck a parked car. Edwards claimed that the parking brake and interlock system were still engaged, just as she had left them.[1]

Wilkerson filed this action against the bus company and Edwards (collectively, the bus company). At a jury trial, Wilkerson contended that Edwards negligently parked the bus on an incline without engaging the parking brake or its related interlock system.

Wilkerson's witness, John Hundley, III, the bus company mechanic responsible for maintenance of the brakes and interlock system, testified that no one reported any trouble with those mechanisms prior to this incident. Hundley also testified that a few days after the accident, without altering the brakes or the interlock system, he took the bus to Regency Mall, tested the brakes and interlock system in the general area where Edwards had stopped the bus, and found that they were in proper operating condition.

---

[1] Although the record indicates that the parking brake and the interlock system are related, it does not disclose how they are related or how the interlock system is engaged or functions.

Hundley and Robert D. Baldwin, a mechanical engineer who had familiarized himself with the brakes, described the braking system as one that is "fail safe" because if the air pressure system malfunctions, the brakes automatically engage, preventing the bus from moving. Therefore, Hundley and Baldwin opined that the bus would not have rolled if Edwards had engaged the parking brake and interlock.

Overruling a number of the bus company's objections to the court's rulings upon the evidence, instructions, and the bus company's motions to strike Wilkerson's evidence and to set aside the jury's $300,000 verdict, the trial court entered judgment on the verdict. The bus company appeals.

In accordance with well-settled appellate principles, we consider the evidence in the light most favorable to Wilkerson, the party who prevailed below.

## LIABILITY

### 1. ADMISSIBILITY OF EVIDENCE

■ The bus company maintains that the trial court should not have permitted Hundley to describe the results of his tests of the parking brake and interlock system. It argues that because this was a reconstruction of the circumstances of the accident, Wilkerson was required to show that the conditions under which Hundley's tests were made were the same or substantially similar in essential particulars to those existing at the time of the accident. However, Wilkerson offered the evidence merely to show that Hundley's tests indicated that the unaltered brakes and interlock system were not defective. Hundley's tests were not a reconstruction of the circumstances of the accident. Accordingly, Wilkerson was not required to show that the suggested minor variations in grade, weight load, and air pressure in the parking brake and interlock system would not have caused a properly functioning brake and interlock system to fail. Therefore, we find no error in admitting the results of these tests.

■ Next, the bus company argues that the trial court incorrectly admitted Baldwin's testimony because he had not qualified as an expert on Flexible buses.[2] Baldwin testified: (1) that he was

---

[2] We do not consider the bus company's contention that Baldwin and a Dr. Robert Cook should not have been permitted to give certain testimony because such testimony and the bases therefor were not disclosed, as required by the bus company's pretrial interrogatories.

a general engineering consultant; (2) that approximately 10% of his 40-year experience had involved mechanical engineering problems, and that he currently was working with pneumatic, electric, and hydraulic control systems; and (3) that his knowledge of the bus' braking system was based on the manufacturer's maintenance and operator's manuals. Given this evidence, we cannot say that the trial court abused its discretion in permitting Baldwin to qualify as an expert witness. *Noll* v. *Rahal*, 219 Va. 795, 800-801, 250 S.E.2d 741, 744-45 (1979).

## 2. SUFFICIENCY OF EVIDENCE OF NEGLIGENCE

■ The bus company argues that Wilkerson did not establish a *prima facie* case of negligence because she must show more than that the accident resulted from one of two causes, for one of which the bus company is responsible and for the other of which it is not. At trial, the bus company contended that the evidence established: "(1) an inference of operator error; *and* (2) an inference of unexplained mechanical failure." (Emphasis added.) In support of the second inference, the bus company relies upon the testimony of Edward E. Gray, Jr., a bus company supervisor, who said that about five years earlier, when he was aboard another bus equipped with a braking and interlock system similar to Edwards's bus, it inexplicably began to roll although its hand brake and interlock system were engaged.[3] Here, however, Wilkerson's circumstantial evidence of the lack of mechanical defect in the brakes and interlock system at the time of the accident, if believed, *negated* an inference that the accident occurred because of some unexplained mechanical failure. Hence, the evidence was sufficient to support a finding that Edwards was negligent in failing to engage the parking brake and interlock system.

We cannot consider these issues because neither the interrogatories nor the answers were made a part of the record, as authorized by Rule 5:10(a)(6). Our review is limited to a consideration of the record before us. *Paddock* v. *Mason*, 187 Va. 809, 812, 48 S.E.2d 199, 200 (1948).

[3] Gray did not know the results of any subsequent brake test on that bus, which tests he said "usually" were made.

## 3. INSTRUCTIONS

The bus company contends that the trial court erred in granting and refusing certain instructions. As explained hereinafter, we find no reversible error in these rulings.

█ The bus company argues that the court should not have instructed the jury that Wilkerson was a "passenger" because Wilkerson's amended motion for judgment alleged that Wilkerson

> was an *invitee* of the defendants in that she had presented herself as a willing, available and accepted *passenger* . . . [and that it was the defendants' duty] to use *the highest degree of care* to operate said bus free from negligence and with due regard for the safety of the *passengers* on board.

(Emphasis added.) We think that these allegations sufficiently allege, albeit inartfully, that Wilkerson was a passenger.

█ The bus company also claims that the instruction was improper because the evidence showed that the bus company had not "accepted" Wilkerson's fare and that she was not yet under "the care, custody, or observation of [the bus company]," and thus she was not a passenger entitled to a higher degree of care. Although we have not previously considered this exact issue, we held in *Norfolk & W. R.R. Co.* v. *Groseclose*, 88 Va. 267, 272, 13 S.E. 454, 455 (1891), that "[t]he purchase of a ticket, before entering a railroad train is not necessary to constitute a person a passenger." And a number of other jurisdictions have held that passengers who enter or attempt to enter a carrier's premises with the carrier's express or implied consent in preparation for transportation for consideration, attain passenger status upon such entry or attempt. *Wise* v. *Fannin*, 306 Ky. 327, 329, 207 S.W.2d 764, 765 (1948); *Fenton* v. *Minneapolis St. Ry. Co.*, 252 Minn. 75, 78-79, 89 N.W.2d 404, 408 (1958); *Oklahoma Ry. Co.* v. *Roebuck*, 205 Okla. 549, 550-51, 240 P.2d 775, 777 (1951). Thus, we conclude that under the facts of this case Wilkerson became a passenger upon her entry into the bus.[4]

█ Next, the bus company contends that the trial court erroneously refused to permit the jury to consider whether Wilkerson assumed the risk of injury both in entering the bus at a time when

---

[4] Because of this ruling, we need not discuss the bus company's contention that the trial court erred in failing to instruct the jury that Wilkerson was a licensee.

Edwards was not present, and by jumping from the moving bus. Assumption of the risk requires that "the nature and extent of the risk must be *fully appreciated* and the risk must be voluntarily incurred." *VanCollom* v. *Johnson*, 228 Va. 103, 106, 319 S.E.2d 745, 746 (1984) (quoting *Amusement Slides Corp.* v. *Lehmann*, 217 Va. 815, 819, 232 S.E.2d 803, 805 (1977)) (emphasis added). The bus company did not show that Wilkerson should have anticipated, much less fully appreciated, the risk that the parked bus would roll away from the bus stop. Further, Wilkerson did not assume the risk of injury in jumping from the bus because, given the potential for harm in remaining on a runaway bus, her "choice was not voluntary, as a matter of law, because the alternative course of conduct was one which she could not reasonably be required to accept." *Id.* at 107, 319 S.E.2d at 747.

▮ Next, the bus company argues that the trial court should have granted its tendered instruction on unavoidable accident. It relies upon the case of *Holbert* v. *Evans*, 209 Va. 210, 215, 163 S.E.2d 187, 191 (1968), in which we said that if "there is a reasonable theory of the evidence under which the parties involved may be held to have exercised due care notwithstanding that the accident occurred," such an instruction should be granted. In *Holbert*, the defendant, whose automobile struck an infant pedestrian incapable of contributory negligence, introduced evidence from which the jury could infer that she had exercised that degree of care required of her by the circumstances. Here, although the bus company showed that before the Wilkerson incident, an engaged parking brake and interlock system inexplicably failed to hold another bus in its parked position, the bus company never showed what precautions were taken thereafter to avoid a similar occurrence. Under these circumstances, we cannot say that the trial court erred in refusing to grant an instruction on unavoidable accident.

## DAMAGES

The bus company argues that the trial court should not have permitted Larry Sinsabaugh, a vocational rehabilitation counselor, to project Wilkerson's loss of earning capacity and expected weekly wage loss because he based his opinion upon information inapplicable to Wilkerson. Specifically, the bus company notes: (1) that Sinsabaugh assumed that Wilkerson would have worked 40 hours a week for the balance of her working life, although

there was no evidence that she usually worked a 40-hour week before her injury; (2) that Sinsabaugh's projections were based in part on the wages of maids and cleaners in schools and hospitals, who usually earn more than maids who work by the day in private homes, as Wilkerson had done for a number of years prior to her injury; and (3) that Sinsabaugh's projections included only the daily wages of Wilkerson's three highest-paying employers, although the evidence showed that her other five employers paid Wilkerson substantially less.

In *Bulala* v. *Boyd*, 239 Va. 218, 233, 389 S.E.2d 670, 677 (1990), we noted that "[i]n order to form a reliable basis for a calculation of lost future income or loss of earning capacity, such evidence must be grounded upon facts specific to the individual whose loss is being calculated." Because Sinsabaugh's opinion was not grounded on all the data relevant to Wilkerson's projected loss of earning capacity, his projections should not have been admitted in evidence. And, given the substantial amount of the verdict, we cannot say that this was harmless error. *See Gallop* v. *Sharp*, 179 Va. 335, 338, 19 S.E.2d 84, 86 (1942).

## CONCLUSION

Consequently, for the error of the trial court in permitting the witness Sinsabaugh to project Wilkerson's wage loss and lessening of earning capacity, we will reverse the judgment below and remand the case for a new trial. Because there was no error in the rulings upon the issues of liability, we will limit the new trial to the issue of damages only.

*Reversed and remanded.*

JUSTICE HASSELL, with whom JUSTICE LACY joins, concurring in part and dissenting in part.

I concur with the majority on the issues regarding liability. I write separately, however, because I do not agree that the trial court erred when it admitted the testimony of Larry Sinsabaugh. It is my opinion that even if admission of such testimony was error, at most, it was harmless.

Sinsabaugh's testimony regarding Wilkerson's average weekly loss of compensation was based in part upon wage projections and also in part upon facts which he ascertained from an interview

with her. He relied upon her work history, educational attainment, medical condition, salary information received from her past employers, her physical abilities, and age. Accordingly, I would hold that Sinsabaugh's testimony was based upon facts sufficiently particularized to Wilkerson's circumstances.

Even if, as the majority holds, the trial court erred in admitting Sinsabaugh's testimony, such error should be considered harmless. Robert W. Cook, Jr., a professor and chairman of the Department of Economics at the University of Richmond, testified on behalf of Wilkerson. Cook interviewed three of Wilkerson's former employers who informed him "how much money they would have paid [her] over that year, how many days she has lost, and how much she made each day." He concluded that amount was $5,585. Cook relied upon that information, Wilkerson's age, and the number of years that she would have continued to work and calculated her lost wages as $50,672. Cook's testimony alone, which was properly admitted in evidence, is more than sufficient to support the jury's verdict. Accordingly, I would affirm the judgment of the trial court on the issue of damages.