Present: Lacy, Keenan, Koontz, Kinser, Lemons and Agee, JJ.,
and Russell, S.J.

ROGELIO VASQUEZ, et al.                         OPINION BY
                                      SENIOR JUSTICE CHARLES S. RUSSELL
v.   Record No. 040913                        January 14, 2005

APOLINARIO MABINI, as Joint Heir and
Administrator of the Estate
of Tamara Jane Mabini

              FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                      Dennis J. Smith, Judge

     This appeal presents questions whether expert testimony

was erroneously admitted in the trial of a wrongful death case

and whether objections to the testimony were waived.

                        *Facts and Proceedings*

     The facts will be summarized in the light most favorable

to the plaintiff, the prevailing party at trial.  On

January 29, 2002, at about 12:45 p.m., while Tamara Mabini was

standing at the intersection of Routes 6363 and 602 in Reston,

she was struck from behind and killed by a Fairfax County

Connector bus.  The bus was driven by Rogelio Vasquez, an

employee of First Transit, Inc., which operated the bus

service under a contract with Fairfax County.

     At the time of her death, Mrs. Mabini was 53 years old.

She had been employed as a part-time clerical worker earning

$8.00 per hour for the preceding three months but was seeking

full-time clerical employment.  She was living with her

husband, Apolinario Mabini, and her adult son by a former

marriage, Matt Pomeroy, who was in his late twenties. Pomeroy was bipolar and had emotional and psychological problems. He had worked only sporadically and was dependent upon Mrs. Mabini for most of his care. Pomeroy died on June 2, 2002, less than six months after his mother's death. In addition to her part-time employment, Mrs. Mabini had devoted some 36 hours per week to caring for her household.

Three months before the accident, the Mabinis had moved to Virginia from Texas. Mrs. Mabini had worked there for over a year as a clerical worker and earlier had worked as a hairdresser for 27 years. A primary motivation for the family's move to Virginia had been Mrs. Mabini's desire to be near her married daughter and three-year-old grandchild, who lived in Falls Church. She had an "extremely close" relationship with them and gave them considerable household assistance.

Apolinario Mabini brought this action for wrongful death as administrator and representative of the beneficiaries of Mrs. Mabini's estate, against Vasquez and First Transit, Inc. A three-day jury trial ended January 15, 2004, with a verdict of $1,999,872.00 for the plaintiff, upon which the trial court entered final judgment. We granted the defendants an appeal limited to a single assignment of error: that the trial court abused its discretion in permitting plaintiff's expert witness

to present opinion testimony that was "speculative, counterfactual, and unsupported by the evidence in the case."

At trial, the plaintiff presented the testimony of Richard B. Edelman, a Professor Emeritus of Finance at The American University, as an expert witness with regard to the decedent's expected loss of income and the economic value of the loss of her services, protection, care and assistance. No objection was made to his qualifications. He testified that Mrs. Mabini's lost income and benefits would have amounted to $121,533 if she had worked until age 60 and $203,145 if she had worked until age 66. He gave the value of her lost household services as $343,287 and reasonable funeral expenses as $12,403. His calculation of the total economic loss to the beneficiaries was thus $477,223 based on retirement at 60 and $558,835 based on retirement at 66. These conclusions were necessarily dependent upon certain assumptions to which the defendants objected: that the decedent would have found full-time employment the day after the accident at a wage of $8.00 per hour ($16,000 per year) and would have remained so employed until retirement; that her employer would have provided additional contributions amounting to 3.7% of her income in the form of a "401(k)" or similar retirement benefit; that her income would increase by 4.25% per year, and that Pomeroy, her dependent adult son, would have continued to

3

live 24 years into the future even though the witness knew that he had died before trial. The defendants also objected to the witness' failure to consider the life expectancy of the decedent's husband in arriving at the economic value of her lost household services.

*Discussion*

*A. Expert Testimony*

Code § 8.01-401.1 provides that an expert witness in a civil case may testify and render an opinion "from facts, circumstances or data made known to or perceived by such witness at or before the hearing or trial," and that such data need not be such as to be admissible in evidence "if of a type normally relied upon by others in the particular field of expertise. . . ." We have never, however, construed that section to permit the admission of expert testimony that lacks evidentiary support. Lawson v. Doe, 239 Va. 477, 483, 391 S.E.2d 333, 336 (1990). Estimates of damages based entirely on statistics and assumptions are too remote and speculative to permit "an intelligent and probable estimate of damages." Bulala v. Boyd, 239 Va. 218, 233, 389 S.E.2d 670, 677 (1990).

> In order to form a reliable basis for a calculation of lost future income or loss of earning capacity, such evidence must be grounded upon facts specific to the individual whose loss is being calculated.

Id. (emphasis added).

4

Expert testimony founded upon assumptions that have no basis in fact is not merely subject to refutation by cross-examination or by counter-experts; it is inadmissible. Virginia Financial Assoc. v. ITT Hartford Group, 266 Va. 177, 183, 585 S.E.2d 789, 792 (2003). Failure of the trial court to strike such testimony upon a motion timely made is error subject to reversal on appeal. Countryside Corporation v. Taylor, 263 Va. 549, 553, 561 S.E.2d 680, 682 (2002); Gilbert v. Summers, 240 Va. 155, 159-61, 393 S.E.2d 213, 215-16 (1990). Furthermore, expert testimony is inadmissible if the expert fails to consider all the variables that bear upon the inferences to be deduced from the facts observed. Countryside, 263 Va. at 553, 561 S.E.2d at 682.

Here, the Edelman testimony was inadmissible for all the foregoing reasons. The economic value of the decedent's lost income was projected from a base of $16,000 per year, beginning the day after the accident and continuing until retirement, based upon an assumption of full-time clerical work with added annual increases and fringe benefits. On cross-examination, however, the expert admitted that Mrs. Mabini had little experience as a clerical worker, had earned less than $1000 the previous year and that her annual earnings for the preceding several years had never exceeded $7000. She had been seeking full-time clerical employment since moving to

5

Virginia, but had been unable to find anything but part-time work.  The record does not show that she had ever held full-time employment or received any fringe benefits.  She was not seeking employment as a hairdresser, despite her experience in that occupation, but the expert's opinion was that her potential earnings would be approximately the same in either field.  On similar facts, we have previously held that such projections lack the required grounding in the applicable facts, and hence are inadmissible.  See Greater Richmond Transit Co. v. Wilkerson, 242 Va. 65, 71-72, 406 S.E.2d 28, 33 (1991).

The expert's assumption that the decedent would have received a 3.7% retirement benefit in addition to her salary was premised on his further assumption that she would have found full-time clerical employment the day after the accident.  He testified: "most full-time employees get that." His conclusion, however, was based only upon a statistic applied to facts entirely unrelated to the personal circumstances of the decedent.  Similarly, his assumption that her income would have increased 4.25% each year until retirement was based upon a statistical projection of wage rate increases applied to the unfounded assumption of full-time employment.

6

In calculating the value of Mrs. Mabini's lost services, protection, care and assistance, the expert made the assumption that her son, Pomeroy, would have lived throughout his mother's remaining life expectancy, an additional 24 years, and that he would continue as an adult dependent throughout that time. In fact, the expert was aware that Pomeroy had died before trial, less than six months after his mother's death. In this respect, the present case is similar to Countryside, where an expert "assumed a fiction and based his opinion of damages upon that fiction." We held that testimony to be "speculative and unreliable as a matter of law." Countryside, 263 Va. at 553, 561 S.E.2d at 682.

### *B. Waiver*

The plaintiff contends that the defendants waived any objection they might have had to the Edelman testimony by failing to make a contemporaneous objection in the trial court. Seven months before trial, the court entered a scheduling order requiring the parties to identify expert witnesses at least 90 days before trial. Pursuant to that order and an interrogatory request, the plaintiff designated Edelman as his expert and filed a summary of the nature of his expected testimony. The scheduling order provided that "all information discoverable under Rule 4:1(b)4(A)[i] . . . shall be provided" and that objections to witnesses were to be filed

7

five days before trial or would be considered waived. The cited rule requires disclosure of "the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion." The defendants filed no pretrial objection to Edelman's proposed testimony and the plaintiff points to that failure as a waiver. An examination of the summary filed by the plaintiff, however, would have given the defendants no reason to object to the proposed testimony. It contained no figures, recited no work history and revealed none of the assumptions upon which the witness intended to rely, particularly those of full-time employment and ongoing care for Pomeroy despite his death. It failed to put the defendants on notice of any of the fallacies in the opinion that would become apparent at trial, and their failure to make a pretrial objection did not, therefore, constitute a waiver.

At trial, after the opening statements of counsel and in the absence of the jury, defense counsel advised the court that he believed that some of the plaintiff's expert testimony might be inadmissible in that "many of the assumptions and facts that form the basis of his opinion aren't in accordance with the evidence of the case" and that "there will be objection to various of his opinions . . . as assumptions with no evidentiary support." The trial court responded: "I'll

have to deal with those on an individual bas[i]s. . . . "[W]e'll deal with it as he testifies." The trial court informed counsel that such objections could be heard at a bench conference or in the absence of the jury.

The plaintiff's direct examination of Edelman did not reveal his reliance upon the unsupported assumptions that underlay his opinion, and the defendants made no objections at that stage. Cross-examination was necessary to bring these matters to light. After a brief redirect, the defendants moved to strike the Edelman testimony as "founded on assumptions that have no basis in fact," citing Tarmac Mid-Atlantic, Inc. v. Smiley Block Co., 250 Va. 161, 458 S.E.2d 462 (1995). The plaintiff argued that it was premature to rule on a lack of factual foundation for the expert testimony because he had not yet completed his case in chief and that he intended to call further witnesses. The court stated: "I'll wait till the evidence comes out," but further observed: "I'm not concerned about his arguments on methodology. I think that becomes an issue for the jury."

The plaintiff then called four more witnesses, none of whom gave evidence that would provide any factual support for the expert's assumptions to which the defendants had objected. The plaintiff rested and the defendants renewed their motion to strike the Edelman testimony. The court overruled the

motion on the ground that the question of factual support for the expert's assumptions created an issue for the jury.

In these circumstances, we cannot say that the defendants waived their objections to the Edelman testimony. The trial court was advised, before any evidence had been presented, of the probability of an objection and the grounds for it. The trial court deferred a ruling until the evidence was presented. At the first opportunity, after the flaws in the expert testimony had become apparent on cross-examination, the defendants moved to strike it. The trial court postponed a ruling until the plaintiff had rested, at which time the defendants renewed their motion.

One of the salutary purposes of our contemporaneous objection rule, now set forth in Rule 5:25, is to afford the trial judge a fair opportunity to rule intelligently on objections while there is still an opportunity to correct errors in the trial court, see State Hwy. Comm'r. v. Easley, 215 Va. 197, 201, 207 S.E.2d 870, 873 (1974), and to protect the trial court from litigants asserting error on appeal that had not been raised at trial. Shocket v. Silberman, 209 Va. 490, 494, 165 S.E.2d 414, 418 (1969). Here, as in Countryside, the party objecting to flawed expert testimony made no objection while the testimony was being given, but moved to strike at its conclusion, after the flaws had become

apparent, thus giving the trial court a proper opportunity to correct the error of admitting it.  <u>See</u> 263 Va. at 552 & n.2, 561 S.E.2d at 682 & n.2.

## *Conclusion*

Because the expert testimony was based upon fictional assumptions not supported by the evidence, it was speculative and unreliable as a matter of law and should have been stricken.  Because the defendants made a timely motion to strike the evidence and did not waive their objections to it, the trial court erred in denying their motion.  Because the jury found for the plaintiff on the issue of negligence and no error is assigned to that finding, and because there was evidence, other than the expert testimony, to support an award of damages, we will reverse the judgment and remand the case to the trial court for a new trial, limited to the issue of damages.

<u>Reversed and remanded.</u>

11