Present: Koontz, Kinser, Lemons, and Mims, JJ., and Russell and Lacy, S.JJ.

CNH AMERICA LLC

v. Record No. 091991    OPINION BY JUSTICE DONALD W. LEMONS
                                        January 13, 2011

FRED N. SMITH

FROM THE CIRCUIT COURT OF SMYTH COUNTY
Birg E. Sergent, Judge Designate

In this appeal, we consider whether the trial court erred in admitting into evidence the opinion testimony of the plaintiff's two expert witnesses. For the reasons stated below, we will reverse the judgment of the trial court and remand for further proceedings.

I. Facts and Proceedings Below

On October 12, 2002, Fred N. Smith ("Smith"), a then 72-year-old farmer, was severely injured when a hose on his newly-purchased New Holland 616 disc mower ("the mower") exploded and injected burning hydraulic fluid into his hand. Smith had purchased the mower from Lebanon Equipment Co., Inc. ("Lebanon"), an agricultural equipment dealer, approximately two months before the accident.

On the day of the accident, one of Smith's sons had difficulty operating the mower and called for Smith's assistance. As Smith approached the tractor, he "heard a bang, like a .22 had went off." Smith could not remember what happened, but he found himself lying on the ground with his

hand burning. Smith was taken to the hospital, where doctors determined that his injuries were caused by the injection of hydraulic fluid into his right hand. The injuries required five surgical operations, including the partial amputation of the middle finger on his right hand. Smith's medical bills totaled approximately $79,000.

Smith filed a civil action against New Holland North America, Inc. ("New Holland") and Lebanon containing five counts: (I) negligence against New Holland; (II) strict liability against New Holland; (III) failure to warn against New Holland; (IV) negligence against Lebanon; and (V) breach of express and/or implied warranty against both New Holland and Lebanon. CNH America, LLC ("CNH") responded in place of New Holland to Smith's motion for judgment with a demurrer and grounds of defense, claiming that CNH had been "improperly named as New Holland."[*] Subsequently, Lebanon was dismissed from the action and Counts II and III were struck, leaving only Counts I and V for negligence and breach of warranty against CNH.

---

[*] The final judgment order in this case is styled as "Fred N. Smith, Plaintiff v. New Holland North America, Inc., (now known as CNH America LLC) Defendant." The defendant initiated its appeal with a filing in the trial court captioned: "CNH America LLC's Notice of Appeal." CNH filed its petition for appeal as "CNH America LLC, Petitioner v. Fred N. Smith, Respondent."

Before trial, CNH moved to exclude Smith's two liability experts. CNH sought to exclude Smith's hose expert, Steven D. Haubert ("Haubert"), asserting that his opinions were inadmissible because they lacked adequate foundation or basis in fact. CNH also sought to exclude Dennis L. Heninger ("Heninger"), Smith's hydraulics systems expert, arguing that Heninger was not qualified to offer opinion testimony and his opinions lacked adequate foundation or basis in fact. The trial court denied CNH's motions and permitted Haubert and Heninger to testify.

At trial, Smith asserted that the mower's hose had a manufacturing defect in its internal wire braiding, which caused the hose to curl under pressure. Smith argued that this curled, pressurized hose became pinched in a gap caused by a design defect in the mower. In combination, Smith asserted that the manufacturing defect in the hose and the design defect in the mower caused the hose to rupture. Smith conceded that he needed the expert testimony of both Haubert and Heninger to prove his case, stating:

> Heninger gives us the gap and the pinching. Haubert gives us the initial weakness in the hose which causes the torquing. Taken together, it explains how this accident occurred.

Smith also specifically admitted that "if [the court] were to exclude Heninger in particular . . . we don't have a case."

Haubert, an engineering manager for a window company, testified that the hose had a manufacturing defect called "tight carrier" that caused the hose to curl under pressure. Haubert had previous experience working for hose manufacturers, but he had never before been qualified as a hose expert. Haubert explained that there were three methods he could have used to determine the cause of the defect: he could pressurize the hose in order to see how it responds; he could peel back the outer layer of the hose to examine the internal wire braiding; and he could x-ray the hose to see the internal braiding. However, Haubert admitted that he did not perform any of these tests that may reveal the presence or absence of a "tight carrier" defect.

Additionally, Haubert testified that he used a borescope, a tubular viewing device used to inspect the inside of cylindrical objects, Webster's Third New International Dictionary 256 (1993), to inspect the inside of the hose, but he saw no evidence of a "tight carrier" defect. Even though he admitted that he saw no evidence of a defect in the hose, Haubert testified that it was still his opinion that the hose was defective because it "failed young."

Smith offered Heninger to testify about the hydraulic system of the mower. During voir dire examination on qualifications, Heninger admitted that his experience with

hydraulic systems was limited to the mining industry and that he was not an expert in the hydraulic system of this particular type of hay mower or agricultural equipment generally. Based on his lack of expertise for hydraulic systems in hay mowers, CNH moved to exclude his testimony as an expert witness. The trial court denied CNH's motion but restricted Heninger's testimony to general "hydraulic hose matters." The trial court stated that Heninger was to be limited to testifying about hydraulic systems generally and could not give his opinion regarding this particular mower, but rather only "generally, with respect to a machine of any sort that has a hydraulic system." The trial court further stated that Heninger could "testify in general now, not specifically."

Nonetheless, Heninger testified about the specific cause of this hose's rupture, opining that the hose became trapped in a "pinch point" in a gap caused by a design defect in the mower. Heninger stated,

> My purpose for – in being here . . . is to be a
> witness and to offer my opinion on what caused
> the hose to fail.

> And in my opinion, the lack of those restraints
> and that design caused <u>that</u> hose to be pinched.

(Emphasis added.) Heninger offered alternative designs for this particular mower and concluded that the design defect

5

could be remedied by adding a bracket over the gap that would prevent the hose from becoming pinched.  He opined that the "gap and [the] lack of restraint on that hose is a safety hazard."

On cross-examination, Heninger admitted that he would never make such recommendations without determining whether the design changes would affect the function or safety of the machine, and he could not state whether these changes would be feasible, effective, or create other safety issues.  He conceded that the design change "wouldn't be [his] recommendation, because [he had not] done the analysis that would be necessary to make that recommendation."  Finally, Heninger admitted that he was "not a hose expert" and never examined or tested the hose, stating, "I don't know anything about the hose . . . I've done no examination of the hose."

CNH moved to strike the testimony of Haubert and Heninger, arguing that "the opinions they offered are inadmissible and insufficient as a matter of law to allow the jury to make a finding that [the mower] was unreasonably dangerous."  The trial court denied the motions and admitted their testimony, stating that "they're just barely experts, maybe but . . . that's all they have to be."

After presentation of the evidence and instructions to the jury, it returned a verdict for Smith in the amount of

6

$1,750,000.  The trial court denied CNH's post trial motions for a new trial, to set aside the verdict as excessive, and to set aside the verdict for insufficient evidence.

CNH timely filed a notice of appeal to this Court.  We awarded an appeal on the following assignments of error:

1.  The Trial Court committed reversible error in allowing unqualified and speculative expert opinion testimony from Steven Haubert that the subject hose was defectively manufactured, despite his admission that (a) he failed to conduct the tests that he testified were necessary to reveal the presence or absence of the alleged defect, and (b) his own unscientific examination of the hose revealed no defect.

2.  The Trial Court committed reversible error in permitting Dennis Heninger's opinion testimony that CNH's mower was defectively designed because Heninger was unqualified to render design opinions on the mower and because he did not conduct the analysis required to render his design opinions.

3.  The Trial Court committed reversible error in denying CNH's motion to set aside or remit the jury verdict because the jury's verdict was excessive, against the weight of the evidence and based upon passion, prejudice and/or mistake of law or fact.

II.  Analysis

A.  Standard of Review

"The admission of expert testimony is committed to the sound discretion of the trial judge, and we will reverse a trial court's decision only where that court has abused its discretion."  Tarmac Mid-Atlantic, Inc. v. Smiley Block Co., 250 Va. 161, 166, 458 S.E.2d 462, 465 (1995) (quoting Brown v.

7

<u>Corbin</u>, 244 Va. 528, 531, 423 S.E.2d 176, 178 (1992)). Therefore, we apply an abuse of discretion standard when reviewing a trial court's decision to admit expert opinion testimony.  <u>Keesee v. Donigan</u>, 259 Va. 157, 161, 524 S.E.2d 645, 647 (2000).

We have held that "[e]xpert testimony is allowed where it 'will assist the trier of fact to understand the evidence or to determine a fact in issue.' "  <u>Norfolk Southern Railway Co. v. Rogers</u>, 270 Va. 468, 479, 621 S.E.2d 59, 64 (2005) (quoting Code § 8.01-401.3.).  "An expert's testimony is admissible not only when scientific knowledge is required, but when experience and observation in a special calling give the expert knowledge of a subject beyond that of persons of common knowledge and ordinary experience."  <u>Neblett v. Hunter</u>, 207 Va. 335, 339, 150 S.E.2d 115, 118 (1966).  Additionally, under Code § 8.01-401.1, an expert's opinion may be based upon "facts, circumstances or data made known to or perceived by such witness."

However, we also have recognized that the admission of expert testimony is limited and "subject to certain fundamental requirements, including the requirement that the evidence be based on an adequate foundation."  <u>Keesee</u>, 259 Va. at 161, 524 S.E.2d at 647.  Therefore, expert testimony is inadmissible if it rests on assumptions that have an

8

insufficient factual basis or it fails to take into account all of the relevant variables. Tittsworth v. Robinson, 252 Va. 151, 154, 475 S.E.2d 261, 263 (1996); Tarmac Mid-Atlantic, 250 Va. at 166, 458 S.E.2d at 465-66. We have explained:

> Expert testimony founded upon assumptions that have no basis in fact is not merely subject to refutation by cross-examination or by counter-experts; it is inadmissible. Failure of the trial court to strike such testimony upon a motion timely made is error subject to reversal on appeal. Furthermore, expert testimony is inadmissible if the expert fails to consider all the variables that bear upon the inferences to be deduced from the facts observed.

Vasquez v. Mabini, 269 Va. 155, 160, 606 S.E.2d 809, 811 (2005) (citations omitted).

B. The Expert Testimony of Haubert and Heninger

Regarding Haubert, the only basis for his opinion testimony that the hose had a manufacturing defect was the failure of the hose itself. That opinion is not based upon an adequate foundation. It is insufficient for Haubert to base his opinion upon the premise that because the hose failed, it was the result of a manufacturing defect. Additionally, Haubert admitted that he failed to perform tests that could have determined whether the hose suffered from the "tight carrier" defect he alleged. When Haubert made his own examination of the hose with a borescope, he conceded that he saw no evidence of a "tight carrier" defect in the hose.

Haubert's opinion testimony concerning the hose's alleged manufacturing defect was not supported by facts, and the trial court abused its discretion in admitting his opinion into evidence.

The trial court also abused its discretion in admitting the expert opinion of Heninger. Heninger admitted that he was not an expert in the hydraulic systems of mowers and had no experience in the design or manufacture of mowers or any other agricultural equipment. An expert's qualifications must correlate to the opinions for which the expert is being offered. King v. Sowers, 252 Va. 71, 78, 471 S.E.2d 481, 485 (1996). The fact that a person is a qualified expert in one field does not make him an expert in another field, even if they are closely related. Combs v. Norfolk & W. Ry., 256 Va. 490, 496, 507 S.E.2d 355, 358 (1998); Tazewell Oil Co. v. United Virginia Bank, 243 Va. 94, 110, 413 S.E.2d 611, 620 (1992). Here, Heninger admitted that he lacked specific expertise in the hydraulics of disc mowers and was unfamiliar with the hydraulic system of this mower.

In Keesee, we clarified the standard for "the admissibility of expert testimony offered to assist a trier of fact in understanding general scientific or technical principles." 259 Va. at 161, 524 S.E.2d at 648 (emphasis added). While a trial court may permit an expert witness to

10

explain the general nature of the principle, testimony that goes further and attempts to relate those general principles to a particular person or event generally is inadmissible because "the probative value of that evidence rest[s] on assumptions . . . that [have] no factual basis in the record." Id. at 162, 524 S.E.2d at 648.

Furthermore, because of Heninger's limited expertise, the trial court ruled that his testimony was to be restricted to hydraulic systems generally and held that he could not testify specifically about the particular mower at issue. However, Heninger's actual testimony went far beyond the court's limitations. He opined that the defect in this particular hose could have caused the hose to get caught in a "pinch point" in the mower, which caused the hose to burst. Heninger also offered alternative designs for the mower, but he conceded that he did not know whether these alternatives would make the mower unsafe or would even be feasible or effective. His opinions about the design of the mower were based upon assumptions not supported by facts and outside his area of expertise. Additionally, he admitted that he was not qualified to testify about the hose. As such, Heninger's opinion testimony lacked adequate foundation, and the trial court abused its discretion in admitting his opinions into evidence.

III.  Post-Trial Motions and Conclusion

This case was submitted to the jury on two theories of liability: negligence and breach of implied warranty.  After the verdict, CNH filed two post-trial motions, each requesting a new trial.  CNH argued that the admission of opinion testimony of Haubert and Heninger constituted error and that the trial court should award CNH a new trial.  Additionally, CNH argues that the verdict was excessive, should be set aside, and that CNH should be granted "a new trial as to all issues."  Finally, one of CNH's alternate requests for relief on appeal states as follows: "CNH requests that this Court set aside the verdict and remand the case for a full trial on the merits."

For the reasons previously stated, the admission of the expert testimony of Haubert and Heninger constitutes reversible error.  Vasquez, 269 Va. at 160, 606 S.E.2d at 811.  Therefore, consistent with CNH's requests for relief, we will reverse the judgment of the trial court and remand "for a full trial on the merits."

Reversed and remanded.